## Tyson's Estate.

*Executors and administrators—Duty to convert assets—Surcharge.*

An administrator who retains the assets of the estate in kind on a falling market and sells them at private sale will be surcharged with the difference between the price obtained and the appraised value.

Exceptions to adjudication. O. C. Phila. Co., Oct. T., 1921, No. 521.

Howard B. Wilson and Thomas F. Gain, for exceptant.

LAMORELLE, P. J., April 21, 1922.—The exceptions are filed by accountant and involve the propriety of a surcharge for depreciation in value of jewelry to the extent of $1489.

There are but two distributees, a brother, Edward T. Tyson, Jr., and a sister, Ella T. Dewees. The estate is that of their mother, Emma G. Tyson. She died in February, 1920. The brother is also the administrator. Outside of cash on deposit, a note of $500 owing by the son, household goods $60, clothing $5, the estate consisted of certain articles of jewelry, aggregating in value $3414. This jewelry comprised earrings worth $1800, a brooch worth $1300, bar-pin worth $270, and some minor pieces valued at $44. In using the word worth, we accept the valuation placed thereon by an importer and cutter of precious and semi-precious stones, who made an appraisement at the request of the administrator in February, 1920. A dispute arose between brother and sister as to the proper division of these articles; each wanted the earrings at the appraised value; neither would give in; the brother insisted that he would retain them himself, and a deadlock ensued. This conference took place in June, 1920. This would have been a matter of no moment were it not that the brother was administrator of the estate. Because of this fact, he owed a duty to his sister, the distributee. When unable to agree as to price, and thus blocking an amicable distribution, he should have had a public sale, with proper advertisement and due and ample notice to the sister. One of the duties of an administrator is to convert the estate forthwith, especially where a distribution in kind cannot be effected. Instead, he waited for another year and then sold the jewelry to the one who made appraisement thereof at the loss above noted. This was improper.

The account should have been filed at the expiration of six months, and, from an examination of the credit items, all payments had been made within such time with the exception of a small item of $12.60. Had the administrator

1 D. & C.

ignored the fact that he was as well a distributee, and had an eye single to the purposes of his appointment, in all probability no loss would have ensued; had he sold at public sale when he saw that no distribution could be made, he would have been exonerated from liability in event of loss caused by depreciation. As a fiduciary, he was entitled to the advice and services of counsel at the expense of the estate. He employed an attorney and the fee asked for has been allowed. We find no excuse for his method of settling the estate, especially as the testimony shows that he was cognizant of his sister's attitude from and after June, 1920. Not only did he not sell the jewelry at public sale, but he neglected to file an account until Dec. 21, 1921, fifteen months after the time fixed by law, and then only under stress of citation.

We are of opinion that the facts found by the auditing judge, which we have summarized as above, are warranted by the testimony, that his rulings and conclusions are correct, and that he was justified in surcharging for the loss incurred by the sale of the jewelry.

All exceptions are accordingly dismissed and the adjudication is confirmed absolutely.